UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-22918-BLOOM/Elfenbein

IN RE EX PARTE APPLICATION
OF THE MUNICIPALITY OF
MARIANA & OTHERS FOR AN
ORDER UNDER 28 U.S.C. § 1782

_____/

**ORDER**

**THIS CAUSE** is before the Court upon Movant Jacques Nasser's ("Movant") Motion to Quash Subpoena and, in the alternative, Motion for Leave to File a Protective Order (the "Motion"), ECF No. [5]. Claimants in *Município de Mariana and Others v. BHP Group (UK) LTD and BHP Group LTD*, No. HT-2022-000304 ("Applicants") filed a Response in Opposition to the Motion (the "Response"), ECF No. [30], to which Movant filed a Reply (the "Reply"), ECF No. [32]. The Honorable Beth Bloom referred the Motion to me for disposition. *See* ECF No. [33]. Having considered the Parties' filings and the relevant law, the Motion is **DENIED** in part and **GRANTED** in part.

I.    BACKGROUND

The instant case began with Applicants' *ex parte* Application for Judicial Assistance filed pursuant to 28 U.S.C. § 1782 (the "Application"), which requested this Court's permission to depose Movant — an individual residing in this District — for use in a suit concerning the Fundão Dam disaster pending in the High Court of Justice in London, England (the "English Litigation"), against BHP Group (UK) Ltd and BHP Group Ltd (the "English Defendants"). *See* ECF No. [1-2] at 1.

For context, Samarco Mineração S.A. ("Samarco") operated the Fundão Dam. *See* ECF

No. [1-3] at 2. English Defendants, via intermediary subsidiaries, have a 50% interest in Samarco. *See id.* The Fundão Dam was located near Belo Horizonte, Brazil, and it collapsed on November 5, 2015. *See id.* at 21. Applicants allege that Samarco operated and used the Fundão Dam to store toxic wastewater, known as tailings, generated by Samarco's nearby iron ore mining operations. *See id.* The Fundão Dam's collapse released approximately 50 million cubic meters of tailings, which destroyed nearby villages, killed 19 people, and caused destruction along the length of the Rio Doce basin. *See id.* at 2.

In 2006, Movant was appointed as a non-executive director of the English Defendants. *See* ECF No. [1-2] at 1-2; ECF No. [5] at 4. In March 2010, Movant was non-executive Chairman of the Board of the English Defendants; Movant served in that capacity until August 2017. *See* ECF No. [1-2] at 1-2. Due to this leadership role, Applicants assert that Movant is uniquely well-suited to testify on central issues in the English Litigation, such as:

> (1) The degree to which the English Defendants and their affiliates knew about risks relating to the Fundão Dam;
>
> (2) The English Defendants' decisions, acts, or omissions in the face of known risks relating to the Fundão Dam;
>
> (3) The English Defendants' overall strategy and risk management in relation to their Brazilian subsidiary operations and the Fundão Dam, including the results of internal investigations and analyses; and
>
> (4) The English Defendants' corporate structure, including the roles and relationships of various entities that played a role in BHP's control over, supervision, management, and funding of their Brazilian entity.

*Id.* at 2. Applicants explain that they require the Court's assistance in taking Movant's deposition because he is beyond the High Court of Justice's jurisdiction as he is not a party to the English Litigation and is no longer a director of the English Defendants. *See id.*

In the Motion, Movant argues that the Court should quash the subpoena issued on him

2

pursuant to the apex doctrine.  *See generally* ECF No. [5].  Movant explains, "[i]n the Eleventh Circuit, a party seeking to depose a high-ranking corporate officer or director 'must first establish that [he]: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success.'"  *Id.* at 8 (quoting *Hickey v. N. Broward Hosp. Dist.*, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014)).  To the first prong of this standard, Movant argues that Applicants have not established that he has unique, non-repetitive knowledge of the facts at issue in the English Litigation.  *See id.* at 8-9.  And to the second prong of the standard, Movant argues that Applicants have less intrusive means to acquire the information they seek.  *See id.* at 12.

In their Response, Applicants argue that the Motion should be denied for two reasons: First, Applicants contend that Movant cannot use the apex doctrine to avoid deposition in a case of this magnitude because "the application of a rigid apex deposition rule [is] better suited to an individual personal injury, employment, or contract dispute in which the apex official had no personal knowledge."  ECF No. [30] at 3 (quoting *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 12703776, at *5 (S.D.W. Va. June 30, 2014); other quotation marks omitted).  Second, Applicants assert that "[e]ven if this case involved a routine two-party dispute with typical damages," the Court should still dismiss the Motion because Movant "has direct knowledge of relevant facts." *Id.* at 4.  To support this claim, Applicants point to Movant's admissions that he was a member of BHP's Samarco subcommittee, which BHP established to "assist [BHP's] Board with its consideration and oversight of matters relating to the failure at Samarco."  *Id.* at 6 (quotation omitted).  Applicants also point to Movant's involvement in approving "a $1.6 billion investment to increase production capacity at Samarco" and his comments "at an annual general meeting of BHP held on November 19, 2015, where he stated that BHP knew in 2013 about an

3

October 2013 report . . . that warned of serious risks at the Fundão Dam." *See id.* at 7-8 (citations omitted).

Finally, in his Reply, Movant challenges Applicants' claim that the apex doctrine categorically does not apply to complex mass-tort actions, like the English Litigation, by arguing that the cases Applicants cite to support this proposition only "allowed discovery to proceed because the apex witnesses in those cases did have personal involvement or unique, firsthand, non-repetitive knowledge of corporate policies and practices[.]" ECF No. [32] at 4-5. And because a categorical rule barring the application of the apex doctrine in mass-tort actions does not exist, Applicants cannot depose Movant as they failed to establish that he "has unique, firsthand knowledge that is non-repetitive of the 14 witnesses and over 200,000 documents to which they already have access, including nearly 200 documents from Mr. Nasser's custodial files, as well as documents from the Samarco Subcommittee and other Board records." *Id.* at 6 (citation omitted).

With the Motion being fully briefed, this matter is now ripe for review.

## II.    LEGAL STANDARDS

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citation omitted). Rule 26(b) explicitly permits a party to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 451 (1978) (footnote call number and citation omitted). Nevertheless, under the apex doctrine, "[c]ourts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they are vulnerable to numerous, repetitive, harassing, and abusive depositions, and

therefore need some measure of protection from the courts." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. Sept. 15, 2015) (quoting *Brown v. Branch Banking and Trust Co.*, No. 13-CV-81192, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014)). "[A] party seeking to depose a high[-]ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Hickey*, 2014 WL 7495780, at *2 (citation omitted). The party seeking to depose a high-ranking official bears the burden of showing that the deposition is necessary. *See id.*

### III.   DISCUSSION

As explained below, the Court concludes that (1) the Motion to Quash Subpoena should be denied because Movant has unique, non-repetitive, firsthand knowledge of the facts at issue and Applicants have exhausted less intrusive means of acquiring the discovery they seek, and (2) Movant should be granted leave to file a protective order.

####    A.   Motion to Quash Subpoena

As a preliminary matter, Applicants' claim that the apex doctrine does not apply to mass-tort actions, like the English Litigation, is unavailing. Applicants cite several cases to support their position on the apex doctrine, but none of those cases support the implementation of a categorical rule barring the application of the apex doctrine in cases like the English Litigation. Rather, the courts in the cases Applicants cite considered the nature and context of the litigation in conjunction with other factors when deciding whether an apex witness could be deposed.[1] In short, the fact

---

[1] *See In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536-37 (S.D. Ind. 2002) (finding that the magistrate judge's order compelling deposition of an apex witness was "neither contrary to law nor clearly erroneous" because (1) the apex witness had "personal knowledge of and involvement in

that this case involves a mass-tort action does not, standing alone, mean that the apex doctrine is inapplicable. Nevertheless, keeping with the cases Applicants cite, the Court will consider the context and nature of the English Litigation — among other factors — when determining whether the deposition against Movant can proceed.

The two main factors the Court will consider in determining whether Movant can be deposed are (1) whether Movant has unique, non-repetitive, firsthand knowledge of the facts at issue and (2) whether Applicants have exhausted less intrusive means of discovery without success before seeking to depose Movant. *See Hickey*, 2014 WL 7495780, at *2. As discussed in the background section of this Order, Movant contends that both factors weigh in favor of quashing the subpoena. *See* Background *supra* at 2-3. However, both arguments fail to convince.

Movant's arguments with respect to the first prong of the standard articulated above are as follows: (1) Movant's membership on the Samarco subcommittee — the subcommittee tasked with

---

certain relevant matters," (2) the case before the court was a multidistrict litigation involving "hundreds of personal injury cases[,]" (3) the magistrate judge gave "due deference to" the apex witness' "need to be protected from abusive deposition tactics" by ordering that the deposition be taken at the apex witness' headquarters and imposing "strict time limits on the questioning[,]" and (4) "nearly all of the depositions" in the case before the court had "already been conducted" and, therefore, "[t]he parties and the Court [could] therefore identify more readily the appropriate areas of questioning to be directed to" the apex witness.); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 13-CV-20000, 2017 WL 10410066, at *2 (N.D. Ala. Apr. 25, 2017) (allowing two apex witnesses to be deposed because (1) the apex witness possessed "direct, personal knowledge of the" issue before the court and (2) the case before the court was a multidistrict litigation); *In re Lipitor (Atorvastatin Calcium) Mktg.*, No. 14-MN-02502, 2014 WL 12621613, at *2 (D.S.C. Nov. 13, 2014) (denying motion to quash deposition notice of apex witness because the plaintiffs "put forward evidence that [the apex witness] may have [had] personal knowledge relevant to" the case before the court and noting that "the concerns underlying the apex doctrine are lessened [ — *not eliminated* — ] in the [multidistrict litigation] context" (emphasis added)); *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2014 WL 12703776, at *5 (S.D.W. Va. June 30, 2014) (allowing deposition of an apex witness to proceed because the apex witness "had personal involvement in significant activities" relating to the issues before the court and because the apex witness' burden was "minimal when viewed in the context of the" multidistrict litigation); *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 08-MD-2004, 2009 WL 4730321, at *2 (M.D. Ga. Dec. 1, 2009) (allowing deposition of two apex witnesses to proceed because the apex witnesses had "sufficient first-hand knowledge of discoverable information regarding" the issues before the court and because the deposition testimony of the apex witnesses would be used "in every case pending in" the multidistrict litigation).

the "consideration and oversight of matters relating to the" collapse of the Fundão Dam — does not establish that he has unique knowledge of the facts at issue in the English Litigation, *see* ECF No. [5] at 9 (quotation and citation omitted); (2) the fact that Applicants plan to ask Movant the same questions they put to the other subpoenaed members of the Samarco subcommittee shows that the information they seek is not uniquely in Movant's possession, *see id.*; (3) Movant's service "as the non-executive Chairman of the Board of the many-times-removed corporate parent of the 50% owner of the entity which operated the Fundão Dam Applicant's failed to establish that Movant has firsthand knowledge of facts concerning the collapse of the Fundão Dam[,]" *see id.* at 10; and (4) Movant's involvement "in a separate federal securities lawsuit against BHP does not establish sufficient significance to overcome apex witness protections[,]" *see id.* at 11 (quotation omitted).  I address each argument in turn.

Movant's membership on both BHP's Board and the Samarco Subcommittee indicates that Movant possesses unique knowledge of the facts at issue in the English Litigation.  As Applicants explain in their Response, during Movant's tenure on both BHP's Board and the Samarco Subcommittee, Movant was involved in: (1) a decision to "increase production capacity at Samarco" before the collapse of the Fundão Dam, which Applicants claim increased strain on the dam and (2) the oversight of Samarco's health, safety, environment, and community relations through his exclusive agenda-setting authority on BHP's Board.  ECF No. [30] at 7.  In addition to his involvement on BHP's Board and the Samarco Subcommittee, Applicants also reference a statement Movant made concerning "an October 2013 report . . . that warned of serious risks at the Fundão Dam[,]" which provides further support for the assertion that Movant possesses unique knowledge relevant to the English Litigation.  *Id.* at 8 (citations omitted).

To overcome Applicants' arguments, Movant relies on *Salinas v. Advance Medical Optics,*

*Inc.*, No. 08-CV-0565, 2009 WL 10672309 (N.D. Ga. Aug. 28, 2009); however, the facts in that case stand in stark contrast to those here. In *Salinas*, a sole personal injury plaintiff sued a medical company when she developed a severe eye infection after using the company's contact lens solution. *See Salinas*, 2009 WL 10672309, at *1. In furtherance of her personal injury claims, the plaintiff sought to depose the CEO of the medical company based on (1) a generalized statement he made to investors following the recall of the injuring contact lens solution and (2) the CEO's role as the highest-ranking executive in the medical company — bases which the court in *Salinas*, ultimately, found insufficient to allow the deposition of an apex witness. *See id.* at 2-3. Here, on the other hand, Applicants seek to depose Movant not merely because he is an executive, but because he was an executive on the governing bodies that were directly involved with the issues at the heart of the English Litigation. *See* ECF No. [30] at 7. Furthermore, unlike the CEO's generalized statement in *Salinas*, Movant's October 2013 statement reflected that he had specific information relating to the serious risks at the Fundão Dam prior to its collapse. *See id.* at 8

Next, Movant focuses heavily on the fact that Applicants intend to ask Movant many of the same questions that they asked or intend to ask other deponents. However, the answers, not the questions, are what matter here. After reviewing the comparison table Movant attaches to the Motion, the questions Applicants hope to ask are not simple "yes" or "no" questions, meaning that, while the questions may be similar, each deponent's answers could very well be different. *See generally* ECF No. [5-13]. And there is a strong likelihood of this being the case. As indicated on the comparison table, the individuals deposed or to be deposed each played a unique role at BHP. *See generally id.* The unique experiences of the deponents will likely shape their answers to any questions asked of them during the deposition. Furthermore, Applicants make the compelling argument that Movant — unlike some of the other deponents — does not currently

face criminal charges relating to the events giving rise to the English Litigation, which means he cannot avoid answering questions pursuant to the right against self-incrimination. *See* ECF No. [30] at 8-9.

Turning to his third argument, Movant's claim that several degrees of separation existed between his involvement on BHP's Board and the Samarco Subcommittee and the collapse of the Fundão Dam is similarly unconvincing. The fact that BHP formed the Samarco Subcommittee shows that the BHP and its Board were actively involved in helping Samarco navigate the aftermath of the collapse of the Fundão Dam, including an investigation into the cause of the dam's failure. *See* ECF No. [5] at 9; ECF No. [30] at 6. And by being an active member of the Samarco Subcommittee, Movant necessarily became directly involved in activities relevant to the English Litigation. *See id.*

Finally, the fact Movant "was a defendant in a separate federal securities lawsuit against BHP does not [alone] establish sufficient significance to overcome apex witness protections here." ECF No. [5] at 11 (citation omitted). In the Memorandum of Law supporting their § 1782 Application, Applicants state that Movant was "a defendant in *In re BHP Billiton Limited Securities*, Litigation, No. 16-cv-01445 (S.D.N.Y.)," a case "relating to whether BHP or Vale misled investors or failed to disclose relevant information about the risk of collapse of the Fundão Dam." ECF No. [1-2] at 8. However, the mere fact that Movant was a defendant in a circumstantially similar case does nothing to help the Court determine whether Movant can be deposed as an apex witness.

Concerning the second prong of the aforementioned standard, Movant's arguments are as follows: (1) Applicants should have first sought the institutional information from "other lower-level employees who likely possess the same institutional knowledge" as Movant, ECF No. [5] at

9

9 (alteration adopted; quoting *Burns v. Tuskegee Univ.*, No. 19-CV-509, 2020 WL 12992095, at *3 (M.D. Ala. Oct. 19, 2020)); and (2) Movant argues that Applicants have less intrusive means to acquire the discovery because they already possess "212,620 documents disclosed by the English Defendants, including nearly 200 documents from Mr. Nasser's corporate custodial files spanning a nine-year-long time period" and because they have deposed or plan to depose at least seven other witnesses, *id.* at 11-12. I address each argument below.

Movant quotes from *Burns v. Tuskegee University* to support his position that Applicants should depose lower-level employees before deposing him.  However, the facts in *Burns* are readily distinguishable from the facts here.  In *Burns*, a plaintiff filed a wage discrimination claim and sought to depose the president of Tuskegee University to acquire information regarding "the policies, procedures, and practices of the University's pay increases." *Burns*, 2020 WL 12992095, at *4.  It was logical for the court in *Burns* to require the plaintiff there to seek the information from lower-level employees before deposing Tuskegee's president because the president "lack[ed] [] personal knowledge of the facts underlying [the p]laintiff's claims[.]" *Id.* at *3.  The same cannot be said here because, as already established, Movant was a member of the governing bodies directly involved in responding to the collapse of the Fundão Dam.  *See* ECF No. [30] at 7.  Moreover, it is unlikely that lower-level employees would have been privy to the management-level decisions that allegedly precipitated in the collapse of the Fundão Dam, rendering a search of those employees futile.

Movant's second argument is unavailing for three reasons.  First, Movant makes the unsubstantiated claim that the discovery already propounded contains the information Applicants seek from Movant.  Without specific citations to discovery that would make Movant's deposition redundant, the Court cannot find that Applicants failed to exhaust less intrusive means of

10

discovery.  *See* ECF No. [5] at 12 ("Because they can readily obtain — or indeed, *likely* have already obtained — the relevant discovery through less intrusive means, Applicants' Subpoena should be quashed. (emphasis added; other emphasis omitted)).

Second, Movant cites three cases to support his argument that Applicants have less intrusive means of obtaining the discovery they seek because they have voluminous quantities of written discovery.  However, the fact pattern of each case is distinct from the present one and, therefore, the findings of those cases should not be applied to the fact-specific inquiry here.  *See Harvey v. Home Depot U.S.A., Inc.*, No. 10-23532-CIV, 2011 WL 13220995, at *1 (S.D. Fla. Apr. 25, 2011) (involving a lawsuit for claims stemming from a plaintiff's slip and fall); *Hayes Healthcare Servs., LLC v. Meacham*, No. 19-CV-60113, 2019 WL 7708240, at *1 (S.D. Fla. July 1, 2019) (involving a lawsuit against two individuals for violation of restrictive covenant).[2]

Third, even if Applicants failed to exhaust less intrusive means of discovery — which the Court does not find, the sheer scale of this case lessens "the concerns underlying the apex doctrine[.]"  *In re Lipitor (Atorvastatin Calcium) Mktg.*, No. 14-MN-02502, 2014 WL 12621613, at *2 (D.S.C. Nov. 13, 2014); *see also In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (finding that the court was "unwilling . . . to require rigid adherence to the burdens imposed" by the apex doctrine where knowledge at the highest corporate levels may be relevant and the deposition procedures in a mass tort action "discourage numerous, repetitive, harassing or abusive depositions").  Here, the Court is ruling on the Motion in the context of the English Litigation, which involves claims of "over 600,000 individuals, businesses,

---

[2] Movant also cites *Gumwood HP Shopping Partners L.P. v. Simon Property Group, Inc.* to support his argument.  However, the court in *Gumwood* does not provide the factual context of the case, making it impossible to determine whether the court's fact-specific rulings can be applied to this case.  *See Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*, No. 11-CV-268, 2015 WL 13664418, at *1 (N.D. Ind. July 7, 2015).

members of indigenous and quilombola communities, municipalities, faith-based organizations, and utility companies" who allegedly suffered injury due to the collapse of the Fundão Dam. ECF No. [1-2] at 3. Considering the scale of the English Litigation and the fact that Movant possesses unique information that could potentially resolve at least some of the claims brought by the over 600,000 individuals and entities, the Court will allow the deposition of Movant to proceed despite the significant amount of discovery already propounded from other sources.[3] *See In re C. R. Bard*, 2014 WL 12703776, at *5 ("The extraordinary number of cases and the astronomical amount in controversy clearly weigh against the application of a rigid apex deposition rule better suited to an 'individual personal injury, employment, or contract dispute in which the apex official had no personal knowledge.'" (quoting *In re Bridgestone*, 205 F.R.D. at 536)).

For the foregoing reasons, Applicants have established that Movant has unique, non-repetitive, firsthand knowledge of the facts at issue and that they have exhausted less intrusive means of acquiring the discovery they seek. The Motion to Quash is, therefore, denied and the deposition of Movant will proceed.

### B. Motion for Leave to File a Protective Order

In the alternative, Movant seeks leave to file a motion for a protective order. *See* ECF No. [5] at 13. Movant argues that a protective order is necessary because the "subpoena on its face identifies no topics and contains no reasonable limitation on scope, and Applicants have refused to agree to any such limits." *Id.* Applicants, for their part, attempt to convince the Court that a motion for protective order, if filed, should be denied because the circumstances present in the

---

[3] Movant's burden may not be as heavy as he claims. As he noted in both the Motion and Reply, Movant is one of eight BHP executives that Applicants deposed. *See* ECF No. [5] at 9. Since Movant is likely to be (one of) the last executives to be deposed, he will likely benefit from a tailored deposition. *See In re Bridgestone*, 205 F.R.D. at 537 (S.D. Ind. 2002) ("[N]early all of the depositions in this case have already been conducted. The parties . . . can therefore identify more readily the appropriate areas of questioning to be directed to [the apex witness].").

instant case do not warrant the entry of such an order. *See* ECF No. [30] at 9-10. Applicants' arguments are premature at this juncture as the Court is simply deciding whether Movant should be granted leave file a motion for a protective order and, because Applicants fail to set forth grounds on which Movant's request should be denied, Movant may file motion for a protective order by the deadline set forth below.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Movant Jacques Nasser's Motion to Quash Subpoena, **ECF No. [5]**, is **DENIED in part.** Accordingly, Applicants may take Movant's deposition notwithstanding his status as a former high-ranking director of the English Defendants.

2. Movant Jacques Nasser's alternative Motion for Leave to File a Protective Order, **ECF No. [5]**, is **GRANTED in part**. Movant shall file his motion for protective order, if any, no later than **November 1, 2024**.

**DONE and ORDERED** in Chambers in Miami, Florida on October 28, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record