# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-22918-BLOOM/Elfenbein

IN RE EX PARTE APPLICATION
OF THE MUNICIPALITY OF
MARIANA & OTHERS FOR AN
ORDER UNDER 28 U.S.C. § 1782

_____/

## ORDER ON MOTION FOR PROTECTIVE ORDER

**THIS CAUSE** is before the Court upon Movant Jacques Nasser's ("Movant") Motion for a Protective Order (the "Motion"), ECF No. [40]. Claimants in *Município de Mariana and Others v. BHP Group (UK) LTD and BHP Group LTD*, No. HT-2022-000304 ("Applicants") filed a Response in Opposition to the Motion (the "Response"), ECF No. [43]. The Honorable Beth Bloom referred the Motion to the undersigned for disposition. *See* ECF No. [41]. Having considered the Parties' filings and the relevant law, the Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

The instant case began with Applicants' *ex parte* Application for Judicial Assistance filed pursuant to 28 U.S.C. § 1782 (the "Application"), which requested this Court's permission to depose Movant — an individual residing in this District — for use in a suit concerning the Fundão Dam disaster pending in the High Court of Justice in London, England (the "English Litigation"), against BHP Group (UK) Ltd. and BHP Group Ltd. (the "English Defendants"). *See* ECF No. [1-2] at 1.

For context, Samarco Mineração S.A. ("Samarco") operated the Fundão Dam. *See* ECF No. [1-3] at 2. The English Defendants, via intermediary subsidiaries, have a 50% interest in

Samarco.  *See id.*  The Fundão Dam existed near Belo Horizonte, Brazil, and it collapsed on November 5, 2015.  *See id.* at 21. Applicants allege that Samarco operated and used the Fundão Dam to store toxic wastewater, known as tailings, generated by Samarco's nearby iron ore mining operations.  *See id.*  The Fundão Dam's collapse released approximately 50 million cubic meters of tailings, which destroyed nearby villages, killed 19 people, and caused destruction along the length of the Rio Doce basin.  *See id.* at 2.

In 2006, Movant was appointed as a non-executive director of the English Defendants.  *See* ECF No. [1-2] at 1-2; ECF No. [5] at 4.  In March 2010, Movant was non-executive Chairman of the Board of the English Defendants, serving in that capacity until August 2017.  *See* ECF No. [1-2] at 1-2.  Due to this leadership role, Applicants assert that Movant is uniquely well-suited to testify on central issues in the English Litigation, such as:

> (1) The degree to which the English Defendants and their affiliates knew about risks relating to the Fundão Dam;
>
> (2) The English Defendants' decisions, acts, or omissions in the face of known risks relating to the Fundão Dam;
>
> (3) The English Defendants' overall strategy and risk management in relation to their Brazilian subsidiary operations and the Fundão Dam, including the results of internal investigations and analyses; and
>
> (4) The English Defendants' corporate structure, including the roles and relationships of various entities that played a role in BHP's control over, supervision, management, and funding of their Brazilian entity.

*Id.* at 2.  Applicants explained that they require the Court's assistance in taking Movant's deposition because he is beyond the High Court of Justice's jurisdiction as he is not a party to the English Litigation and is no longer a director of the English Defendants.  *See id.*  On this record, Judge Bloom entered an order granting the Application, which subsequently led to Applicants issuing a subpoena (the "Subpoena") on Movant.  *See* ECF No. [4] at 1-2.

Movant then moved to quash the Subpoena on the ground that the apex doctrine protected Movant from deposition. *See generally* ECF No. [5]. Judge Bloom referred the Motion to Quash to the undersigned, resulting in its denial. *See generally* ECF No. [36]. In the Order on the Motion to Quash (the "Motion to Quash Order"), the Court reasoned that Applicants could depose Movant under the apex doctrine because Movant possesses unique, non-repetitive, firsthand knowledge of the facts at issue in the English Litigation and Applicants exhausted less intrusive means of acquiring the discovery they seek from Movant. *See generally id.* at 5-12. Despite denying the Motion to Quash, the Court granted Movant leave to file a motion for a protective order. *See generally id.* at 12-13.

On November 5, 2024, Movant filed the instant Motion in which he urges the Court to "(1) limit Applicants' questioning of [Movant] to the discrete topics on which the Court concluded he has unique, non-repetitive, and firsthand knowledge; and (2) accordingly limit [Movant's] deposition to three hours." ECF No. [40] at 4-5. With respect to his first request for relief, Movant argues that the apex doctrine permits reasonable limits on an apex witness's deposition and that the Court should impose such a limitation on the Subpoena because it fails to list the topics on which Applicants will question Movant and, therefore, it is impermissibly broad. *See id.* at 5-6. Specifically, Plaintiff insists that Applicants limit their deposition of Movant to questions relating to "(1) [Movant]'s membership [on] the Samarco Subcommittee, (2) his alleged involvement in the BHP Board's alleged decision to increase production capacity at Samarco and the Board's alleged oversight of Samarco's health, safety, environment, and community relations, and (3) a statement [Movant] made concerning an October 2013 report[.]" *Id.* at 6 (quotations omitted). And as to his second request for relief, Movant asserts that the Court should temporally limit his deposition to three hours, "given the limited number of topics on which the Court concluded that

[Movant] has unique, non-repetitive, and firsthand knowledge[] and Applicants' ability to ask tailored questions." *Id.* at 8.

On November 15, 2024, Applicants filed a Response in Opposition to the Motion in which they first argue the proposed subject-matter limitations would unnecessarily "omit key areas of his relevant knowledge[.]" ECF No. [43] at 1. Second, Applicants argue that Movant's "proposed three-hour time limit for his deposition is unwarranted and would simply operate as an arbitrary barrier to Applicants' ability to obtain relevant testimony." *Id.* at 2.

On November 19, 2024, the Parties appeared before the Court for a hearing on the Motion (the "Hearing"). Both Parties presented their arguments, and the Court took the matter under advisement. With the Parties having fully briefed the instant matter and having had the benefit of oral argument, the instant Motion is now ripe for review.

## II.     LEGAL STANDARDS

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citation omitted). Rule 26(b) explicitly permits a party to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 451 (1978) (footnote call number and citation omitted). Nevertheless, under the apex doctrine, "[c]ourts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. Sept. 15, 2015) (quoting *Brown v. Branch*

*Banking and Trust Co.*, No. 13-CV-81192, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014)). "[A] party seeking to depose a high[-]ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Hickey v. N. Broward Hosp. Dist.*, No. 14-CV-60542, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014) (citation omitted).  The party seeking to depose a high-ranking official bears the burden of showing that the deposition is necessary. *See id.*

If a district court allows the deposition of an apex witness to proceed, it nonetheless retains "the power to limit the scope [and duration] of [a deposition] to ensure a deponent is not subjected to an undue burden or annoyance[.]" *Fla. v. United States*, 625 F. Supp. 3d 1242, 1249 (N.D. Fla. 2022) (citing Fed. R. Civ. P. 26(c)(1)(B)).  "Federal Rule of Civil Procedure 26(c) [] allows a court to issue an order to protect a party or person from undue burden." *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020) (citing *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1249 (11th Cir. 2020)).  "A party seeking a protective order bears the burden of demonstrating the existence of good cause for such an order." *Id.* (citations omitted).  "Under the 'good cause' standard, the court must balance the competing interests of the parties." *Id.* (citations omitted).  "Trial courts have broad discretion 'to decide when a protective order is appropriate and what degree of protection is required.'" *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

## III.    DISCUSSION

As explained below, the Court finds that the Subpoena should be limited to the topics identified in the Application, along with foundational questions about Movant and these four areas of inquiry, and that Movant failed to set forth good cause to limit his deposition to three hours.

A.    <u>Subject-Matter Limitation on the Subpoena</u>

In support of his request to impose subject-matter limitations on the Subpoena, Movant cites to eight cases.  These cases fall into one of two buckets.  The first bucket deals with the depositions of high-ranking government officials while the second deals with the depositions of high-ranking corporate executives.  The Court addresses each of these categories in turn.

Within the first subset of cases, the Court starts its discussion with *Florida v. United States*.  There, the plaintiff — the State of Florida — sought to challenge the defendants' alleged "policy of releasing immigrants who are subject to mandatory detention under the law." *Fla.*, 625 F. Supp. 3d at 1244.  In furtherance of its case, the plaintiff sought to depose the "ICE Enforcement and Removal Operations' Executive Associate Director[.]"  *Id.* at 1245.  Much of the court's legal discussion in *Florida* focused on whether the Executive Associate Director was a high-ranking government official immune from deposition — an issue not relevant to the resolution of the instant Motion.  *See id.* at 1245-49.  Ultimately, the court in *Florida* limited the deposition of the Executive Associate Director to three hours but failed to explain its reasoning supporting that decision, making it impossible for the Court to apply the *Florida* court's finding here.  *See id.* ("Given the circumstances of this case, the Court finds there is good cause to believe that a seven-hour deposition of [the Executive Associate Director] at a location away from his workplace would be unduly burdensome and would subject [the Executive Associate Director] to potential annoyance." (citation omitted)).

Next, Plaintiff cites *Odom v. Roberts*, 337 F.R.D. 359 (N.D. Fla. 2020).  In that case, the plaintiff sued the defendant — the Sheriff of Jackson County — pursuant to 42 U.S.C. § 1983 after his deputy sheriff allegedly planted narcotics and drug paraphernalia in her truck during a routine traffic stop.  *See id.* at 361.  The plaintiff sought to depose the defendant, who in response argued

6

via motion that the court should shield him from deposition because he is a high-ranking government official.  *See id.* at 362.  The court in *Odom* agreed the defendant was a high-ranking government official but held that the plaintiff could nonetheless depose him provided the deposition be limited in time and scope to not interfere with his official duties.  *See id.* at 365.  At first blush, the *Odom* court's ruling appears to support Movant's request for a limited deposition. However, upon closer examination of the facts, the unique circumstances justifying the limitations imposed on the deposition in *Odom* are absent from the instant case.  Specifically, Movant — unlike the defendant in *Odom* — is a retiree and, therefore, Movant does not face the same demands on his time that warranted the limitations the court imposed in *Odom*.  *See* ECF No. [43] at 2; *see also Odom*, 337 F.R.D. at 363 ("Unless afforded some protection, high-ranking officials could be overwhelmed by appearances at depositions — not to mention the time that is required to prepare for depositions — *which necessarily would inhibit performance of their official duties*." (emphasis added; citation omitted)).

Movant next references *Kimberly Regenesis, LLC v. Lee County*, No. 19-CV-538, 2021 WL 5285093 (M.D. Fla. Sept. 29, 2021).  In that case, the plaintiffs sued the defendant — Lee County, Florida — over its decision to deny their rezoning application.  *See id.* at *1.  The *Kimberly* court allowed the depositions to proceed against three of the defendant's commissioners but was "mindful of the [d]efendant's concerns that the depositions should not interfere with the commissioners' official duties and its position of prohibiting duplicative discovery."  *Id.* at *6. Based on these concerns, the court in *Kimberly* limited the depositions of the commissioners to two issues and ordered that all three depositions last no longer than four hours.  *See id.*  Again, the Court declines to use a factually dissimilar case to support the imposition of limitations on the Subpoena.  Unlike the defendant in *Kimberly*, Movant is neither a government official nor an active

board member with the English Defendants as he is a retiree.  *See* ECF No. [43] at 2.  Furthermore, the Motion does not argue that the Subpoena seeks duplicative discovery.  *See generally* ECF No. [40].

In this first grouping of cases, Movant finally relies on *Greater Birmingham Ministries v. Merrill*, 321 F.R.D. 406 (N.D. Ala. 2017).  In *Merrill*, the plaintiff sought to enjoin the defendant — Alabama's Secretary of State — from enforcing Alabama's Photo ID Law.  *See id.* at 407.  During the life of the case, the plaintiff sought to depose the defendant, which prompted the defendant to move for a protective order precluding his deposition.  *See id.* at 407-08.  Recognizing the numerous demands on the defendant's time, the Court in *Merill* found that the deposition could proceed but limited the scope to those topics over which the defendant had unique, personal knowledge.  *See id.* at 410.  As the Court discusses later in this Order, it agrees the Subpoena requires some tailoring.  *See* discussion *infra* Part III.A at 11-14.  However, the Court declines to engage in the same sort of searching inquiry that the court in *Merill* embarked upon to determine which discreet topics were appropriate for deposition because, again, Movant is a retiree who does not have the same demands on his time as the acting Secretary of State of Alabama — "one of Alabama's seven *statewide* elected constitutional officers" — who was responsible for numerous official duties and faced several other lawsuits due to his role as Alabama's chief elections official.  *Id.* at 409-10 (emphasis added).

Even if these cases were not factually dissimilar to the instant case, the Court would still be reluctant to apply their findings here as the legal standard governing the deposition of high-ranking government officials differs from the standard governing the deposition of high-ranking corporate executives.  As stated above, "a party seeking to depose a high[-]ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge

of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Hickey*, 2014 WL 7495780, at *2 (citation omitted).  Whereas a party seeking to depose a high-ranking government official must show that:

> (1) deposing the official is necessary to obtain relevant, "first-hand" information;
>
> (2) the information possessed by the official is important to the case;
>
> (3) *the deposition would not significantly interfere with the ability of the official to perform his government duties or reasonable accommodations could ameliorate such interference*; and
>
> (4) the evidence sought is not reasonably available through less-burdensome means or alternative sources.

*Odom*, 337 F.R.D. at 365 (emphasis added).  While these standards are similar in most respects, the standard governing the deposition of high-ranking government officials requires proof that the deposition would not significantly interfere with the high-ranking government official's duties.  In the Court's view, this distinction exists because of our society's universal interest in maintaining efficient and effective government.  *See id.* at 363 ("For high-ranking government officials, the time consumed by depositions necessarily cannot be devoted to important governmental responsibilities." (citing *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013))); *see also Fla.*, 625 F. Supp. 3d at 1246 ("This doctrine recognizes that top-level government officials 'have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation.'" (quoting *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)).  If the courts allowed depositions of high-ranking government officials to take place as freely as the depositions of corporate executives — who, to be clear, are already afforded heightened protections under the apex doctrine, all individuals and entities — including corporate entities —

operating within a given society would feel the consequences of such an approach.  In short, the first set of cases Movant relied upon fails to provide the Court with grounds to limit the subject matter of the Subpoena.

The Court now addresses the second set of cases, which — to recap — involves the deposition of high-ranking corporate executives.  The Court begins with *In re C.R. Bard, Inc. Pelvic Repair Systems Product Liability*, as it is the only case Movant cites involving mass-tort litigation.  *See* No. MDL 2187, 2014 WL 12703776 at *1 (S.D.W. Va. June 30, 2014).  In *C.R. Bard*, the plaintiff sought to depose a large medical device company's president and chief operating officer.  *See id.*  After weighing the interests of the parties, the court concluded that the president's deposition could proceed but limited that deposition to five hours and six discreet topics.  *See id.* at *5-6.  Importantly, before making this ruling, the court found that the magnitude of the case counseled against a rigid application of the apex doctrine because of the important role the apex witness's deposition could play in resolving the approximately 10,000 cases pending in the multidistrict litigation.  *See id.* at 5.[1]

Consistent with the rationale in *C.R. Bard*, the Court agrees with Movant that the Subpoena — which lists no topics — is too broad and requires tailoring.  *See* ECF No. [40] at 2 ("[Applicants'] Subpoena listed no topics." (citations omitted)).  However, the Court declines to apply limitations as narrow as the ones Movant requested.

Movant argues that the Court should limit the deposition to the three topics the Court

---

[1] Movant also cites *Apple Inc. v. Corellium*, LLC, No. 19-CV-81160, 2020 WL 1849404 (S.D. Fla. Apr. 13, 2020) and *Canales v. Am. Sec. Ins. Co.*, No. 09-CV-1335, 2010 WL 11629029 (M.D. Fla. Apr. 28, 2010).  In both cases, the respective courts limited the scope and duration of an apex witness's deposition; however, neither Court explained the reasoning supporting that decision.  *See Apple*, 2020 WL 1849404 at *4; *Canales*, 2010 WL 11629029 at *3.  As a result, these decisions provide little context for the ultimate ruling and limited support for Movant's position.

identified in its Motion to Quash Order. The topics the Court identified were "(1) Movant's membership [on] the Samarco Subcommittee, (2) [Movant's] alleged involvement in the BHP Board's alleged decision to increase production capacity at Samarco and the Board's alleged oversight of Samarco's health, safety, environment, and community relations, and (3) a statement [Movant] made concerning an October 2013 report[.]" ECF No. [40] at 6. However, when the Court identified those topics, it was merely finding that there was sufficient record evidence to demonstrate that Movant had "unique, non-repetitive, firsthand knowledge" of information sought in the Application, but it did not suggest that those were the only topics about which Movant had "unique, non-repetitive, firsthand knowledge" relevant to the English Litigation.

Furthermore, limiting the deposition only to the topics listed in the Application is sufficient to balance the interests of the Parties. As stated above, the Federal Rules of Civil Procedure favor full disclosure whenever possible in part to ensure that facts determine case outcomes, not clever lawyering. *See Odom*, 337 F.R.D. at 362 ("Rules favoring broad discovery help 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958))). Here, Movant argues that compelling him to answer questions on the four topics listed in the Application would be unduly burdensome because such a ruling would allow Applicants to engage in "a wide-ranging fishing expedition into [Movant's] general knowledge of the English Defendants' operations." ECF No. [40] at 6. This argument is unconvincing. Comparing the topics of inquiry listed in the Application and the three concrete examples the Court identified in its Motion to Quash Order, there is significant overlap between the topics, leading the Court to conclude that a deposition limited to the topics listed in the Application would be neither a waste of Movant's time nor as burdensome as he claims. *Compare* ECF No. [1-2] at 2 (listing the four

central issues on which Applicants hoped to depose Movant), *with* ECF No. [36] at 7 (listing the three concrete examples drawn from the record to indicate that Movant has unique knowledge of the issues at the heart of the English Litigation).

A proportionality analysis likewise does not support Movant's position for such a narrowly tailored deposition. This is not a small, one-claimant lawsuit. This case involves claims of "over 600,000 individuals, businesses, members of indigenous and quilombola communities, municipalities, faith-based organizations, and utility companies" who allegedly suffered injury due to the collapse of the Fundão Dam. ECF No. [1-2] at 3. This speaks to the importance of the issues at stake in the action and the potential amount in controversy given the number of claimants. If the Court were to tailor the Subpoena as narrowly as Movant requests, the Court would risk fencing off key areas of questioning that could elicit answers essential to resolving some or many of the roughly 600,000 claims currently pending in the English Litigation. *See C. R. Bard*, 2014 WL 12703776, at *5 ("[W]hen considering the needs of the case, the amount in controversy, the burdens versus the likely benefits of the discovery, and the importance of the discovery in resolving the issues, there are several factors that weigh in favor of allowing a limited deposition of [the apex witness]."); *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (declining to apply a rigid interpretation of the apex doctrine in the context of a multidistrict litigation). In light of such a risk, the Court finds that the interests of justice require Movant to face broader categories of questioning.

Finally, the concerns an apex witness usually faces are absent from the fact pattern involving Movant. The apex doctrine exists to protect high-ranking corporate executives from "numerous, repetitive, harassing, and abusive depositions[.]" *Apple*, 2020 WL 1849404, at *3. The threat of numerous, repetitive depositions is not an issue for Movant as he will be deposed

just once to further the claims of the roughly 600,000 individuals and entities party to the English

Litigation. *See C. R. Bard*, 2014 WL 12703776, at *5 ("Plaintiffs propose to take [the apex

witness'] deposition just once for use in approximately 10,000 cases currently pending in this MDL

and in state courts. Accordingly, the burden is minimal when viewed in the context of the MDL.");

*Bridgestone*, 205 F.R.D. at 536  ("[T]he plaintiffs seek to depose Mr. Ford, not for purposes of a

single personal injury case, but to depose him once for all of the hundreds of personal injury cases

pending in the MDL, the MDL class action, and many state court cases.").

For the foregoing reasons, Movant's deposition shall be limited to the four topics identified

in the Application along with any foundational questions related to Mr. Nasser and the four topics.

### B.   <u>Temporal Limitation on the Subpoena</u>

Relatedly, upon review of the cases Movant cites in support of a temporal limitation, the

Court finds that the fact pattern here does not warrant such limitations on his deposition.  First,

Movant solely relies on cases involving *actively employed* government and corporate executives.

*See, e.g.*, *Odom*, 337 F.R.D. at 366 (limiting deposition of the Sherriff of Jackson County to two

hours); *Florida*, 625 F. Supp. 3d at 1249 (limiting the plaintiff's deposition of the ICE Enforcement

and Removal Operations' Executive Associate Director to three hours); *Apple*, 2020 WL 1849404,

at *4 (limiting the deposition of Apple Inc.'s Senior Vice President of Software Engineering to

four hours); *Greater Birmingham*, 321 F.R.D. at 411-14 (limiting the deposition of Alabama's

Secretary of State to four hours); *C.R. Bard*, 2014 WL 12703776, at *5-6 (limiting the deposition

of medical device company's president and chief operating officer to five hours).  As the Court

has noted throughout this Order, Movant is a retiree; thus, the circumstances that warranted the

temporal limitations imposed in these cases — the need to alleviate the burden on Government

agencies and corporations from having high-ranking employees absent from their job duties for an

extended period of time — are absent here.  The Court also notes that Applicants have already taken steps to accommodate Movant by agreeing to hold his deposition in Detroit, Michigan — the location of his choosing — even though Movant resides in this district.  This is a significant accommodation as none of the lawyers in this case have an office in Michigan — let alone in a bordering state.

In light of the foregoing, the Court finds that Movant fails to establish good cause for the temporal limitation; thus, the Court will exercise its broad discretion in denying Movant's request to limit the deposition to three hours.  *See Odom*, 337 F.R.D. at 362.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Movant Jacques Nasser's Motion for Protective Order, **ECF No. [40]**, is **GRANTED in part** and **DENIED in part**.

    a. To the extent the Motion seeks subject-matter limitations on the Subpoena, the Motion is **GRANTED** in that the deposition of Movant **SHALL** be limited to the following topics:

        i. The degree to which BHP Group (UK) Ltd. and BHP Group Ltd. (the "English Defendants") and their affiliates knew about the risks relating to the Fundão Dam, including BHP's post-collapse conduct related to the Dam collapse;

        ii. The English Defendants' decisions, acts, or omissions in the face of known risks relating to the Fundão Dam;

CASE NO. 24-CV-22918-BLOOM/Elfenbein

     iii.  The English Defendants' overall strategy and risk management in relation to their Brazilian subsidiary operations and the Fundão Dam, including the results of internal investigations and analyses;

     iv.  The English Defendants' corporate structure, including the roles and relationships of various entities that played a role in BHP's control over, supervision, management, and funding of the Brazilian entity; and

     v.  Foundational questions related to Mr. Nasser and the four topics discussed above.

  b.  To the extent the Motion requests temporal limitations on Movant's deposition, the Motion is **DENIED**.  Movant's deposition will last no longer than the standard seven hours allowed by Federal Rule of Civil Procedure 30(d)(1).  *See id.* ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours.").

**DONE and ORDERED** in Chambers in Miami, Florida on December 3, 2024.

 

 

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

15